**TEACHERS INSURANCE COMPANY,**
**Petitioner,**

v.

**John BERRY, Dennis Nicholson, and Debra King, as Personal Representative of the Estate of Alonzo James, Respondents.**

**John BERRY and Dennis Nicholson,**
**Counter–Petitioners,**

v.

**TEACHERS INSURANCE COMPANY,**
**Counter–Respondent.**

No. TCA 92–40388–WS.

United States District Court,
N.D. Florida,
Tallahassee Division.

June 1, 1995.

James A. Dixon, Jr., Collins, Shipman & Lucas, Tallahassee, FL, Russell S. Buhite,

George A. Vaka, Pro Hac Vice, Tracy Raffles Gunn, Pro Hac Vice, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, FL, for Teachers Insurance Company.

Scott Edward Gwartney, Connor & Associates, Tallahassee, FL, Eric Sigurd Haug, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tallahassee, FL, Richard W. Slawson, Slawson & Glick, Palm Beach Gardens, FL, for John Berry and Dennis Nicholson.

Richard W. Slawson, Slawson & Glick, Palm Beach Gardens, FL, Donald M. Hinkle, Fonvielle & Hinkle, Tallahassee, FL, for Debra King.

## ORDER DETERMINING APPLICABLE LAW

STAFFORD, District Judge.

Before the court are petitioner Teachers Insurance Company's ("TIC") motion to determine applicable law (document 153) and respondents Berry and Nicholson's response thereto (document 159). On May 31, 1995, the court heard argument from the parties on the motion.

### I. *Background:*

On May 6, 1990, respondent Nicholson, while driving respondent Berry's car, was involved in an automobile/pedestrian accident which caused the death of Alonzo James ("James"). At the time of the accident, respondents Berry and Nicholson were insured by TIC pursuant to an automobile liability insurance policy executed in Pennsylvania. The policy provided $25,000.00 bodily injury insurance limits.

As a result of James' death, Debra King ("King"), James' mother, contemplated filing a wrongful death suit against respondents in Florida. On September 10, 1990, David Glatthorn ("Glatthorn"), counsel for the Estate of Alonzo James, wrote Laura Barrett ("Barrett"), the adjuster for TIC, and offered to release respondents Berry and Nicholson from liability for the death of James in return for TIC's tender of the $25,000.00 policy limits. The settlement offer was conditioned on the adjuster for TIC furnishing counsel for the Estate of Alonzo James financial affidavits from respondents Berry and Nicholson confirming the insurance policy limits

and demonstrating respondents' lack of recoverable assets.

On October 10, 1990, Barrett wrote to Glatthorn and indicated that TIC was willing to offer the $25,000.00 policy limits in return for the full and final release of all claims against respondents. Barrett's letter to Glatthorn did not contain or mention either of the requested financial affidavits. On October 18, 1990, Glatthorn wrote to Barrett and advised that the offer of settlement was specifically conditioned on the receipt of the financial affidavits of respondents. The letter extended the deadline for receipt of the financial affidavits and advised that if the same were not received by the close of business on October 29, 1990, the offer of settlement would be withdrawn and not renewed.

TIC did not mail respondent Berry the required financial affidavit for execution until November 2, 1990, and did not mail respondent Nicholson the affidavit until December 18, 1990. To this end, Glatthorn did not receive respondent Berry's affidavit until November 21, 1990, and never received a financial affidavit for respondent Nicholson.

On April 29, 1991, King, as the personal representative of the Estate of Alonzo James, filed a wrongful death lawsuit against respondents Berry and Nicholson in the Second Judicial Circuit Court in and for Leon County, Florida. Upon receipt of the lawsuit, TIC, in accordance with the terms and conditions of the insurance policy with respondents, retained the services of an attorney to defend respondents in the Florida wrongful death action. On September 25, 1992, respondent Berry and Nicholson settled the wrongful death suit by entering a Consent Final Judgment for the amount of $575,000.00, for which respondents are jointly and severally liable. A condition of the Final Consent Judgment was that the Estate of Alonzo James would not execute upon the personal assets of the respondents until after final disposition of a contemplated lawsuit by respondents against TIC.

This action is before the court upon TIC filing a petition for declaratory judgment that it did not act in bad faith in failing to settle the wrongful death action and that the Consent Final Judgment cannot form the basis of a bad faith action against it. In turn, respondents Berry and Nicholson have filed a counterclaim alleging that TIC acted in bad faith when it did not settle the wrongful death action within the insurance policy

limits and alleging negligence by TIC in the handling of the same. The issue pending before the court at this time is whether the substantive law of Florida or Pennsylvania applies with respect to the bad faith issue in this case.

II. *Analysis:*

"In diversity cases, a federal court applies the law of the forum in which it sits." *Broyles v. Bayless,* 878 F.2d 1400, 1402 (11th Cir.1989). Thus, in determining whether Florida or Pennsylvania law applies in this case, the court must apply Florida law. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The crux of the choice of law issue in this case hinges first on ascertaining the nature of a bad faith cause of action against an insurer for failure to settle and then discerning the Florida choice of law rule that applies. *Beattey v. College Centre,* 613 So.2d 52, 53 (Fla. 4th DCA 1992) (citing *Acme Circus Operating Co., Inc. v. Kuperstock,* 711 F.2d 1538, 1540 (11th Cir.1983)). Upon review of the case law, the court determines that the nature of a cause of action against an insurer for bad faith failure to settle is *ex contractu.* Particularly, the Florida Supreme Court's decision in *Government Employees Ins. Co. v. Grounds,* 332 So.2d 13 (1976) makes it clear that because an insurer's duty to an insured to act in good faith in settling a third party insurance claim is bottomed on the insurance contract between the parties, under Florida law, the same is, for choice of law purposes, an action *ex contractu* rather than tort. *See also Swamy v. Caduceus Self Ins. Fund, Inc.,* 648 So.2d 758, 760 (Fla. 1st DCA 1994) ("[i]n Florida when an insured brings an action against his carrier for failure to settle a third party's claim, the action sounds in contract").

TIC argues that as a contract action, the issue of whether Pennsylvania or Florida law applies is governed by the rule of *lex loci contractus.* Pursuant to the rule of *lex loci contractus,* the law of the jurisdiction where the contract was executed controls the litigation. The Florida Supreme Court has held that the *lex loci contractus* rule determines the rights and risks of parties to an automobile insurance policy "on the issue of coverage." *Lumbermens Mut. Cas. Co. v. August,* 530 So.2d 293, 295–96 (Fla.1988); *Sturiano v. Brooks,* 523 So.2d 1126, 1129 (Fla.1988).

The Florida Supreme Court's holding in *Sturiano* does not apply to this case. The underlying dispute between the parties in this case does not concern a matter of insurance coverage; i.e. whether respondents Berry and Nicholson's insurance policy with TIC covered the James accident. As represented by respondents' counsel during the hearing, that issue was resolved within a week after the car accident. Instead, the issue before the court concerns the manner in which TIC went about providing coverage or representing respondents' interest under the policy, i.e., the effort made by TIC to consummate settlement of the underlying Florida wrongful death claim within policy limits after an offer on the same had been made by the attorney for the Estate of Alonzo James. The issue thus entails more TIC's performance under the insurance policy than the execution or interpretation of the same. Under Florida law, "matters concerning performance [of an insurance policy] are determined by the law of place of performance under traditional conflict of law principles." *Grounds,* 332 So.2d at 14–15; *Adams v. Fidelity & Cas. Co.,* 920 F.2d 897, 899 n. 5 (11th Cir.1991) (acknowledging in dicta that in a bad faith failure to settle cause of action Florida law applied to questions regarding the insurer's performance under the contract and the remedies available for non-performance). Accordingly, despite TIC's argument, the choice of law rule that governs is not the law of *lex loci contractus,* but rather, the law of place of performance.

In this case, the place of TIC's performance under the insurance policy is Florida. Florida is the place were the wrongful death action against respondents was brought, maintained, defended, and where negotiation for settlement between the adjuster for TIC and counsel for the Estate of Alonzo James commenced.

Accordingly it is ORDERED: The substantive law of Florida controls the bad faith issue in this case.